UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RODOLFO TAYLOR,

                Plaintiff,

    -against

THE COUNTY OF SUFFOLK, DETECTIVE
ROBERT ANDERSON, DETECTIVE JOHN
CHRISTIE, DETECTIVE ARTHUR STOVER,
DETECTIVE HAROLD WYCOFF, DETECTIVE
ROBERT SIEVERS, DETECTIVE JOHN HORAN,
DETECTIVE D.A. MILLER, DETECTIVE KEVIN
CRONIN, SGT. WILLIAM PETTERSON, OFFICER
JENSEN (fnu), and JOHN DOE AGENTS OF
SUFFOLK COUNTY 1-5,

                Defendants.

**COMPLAINT**

Docket: 22-cv-4198

JURY TRIAL DEMANDED

**"I was 24 years old when I was wrongfully charged with these robberies, and I spent the next 27 years of my life behind bars. … [T]hink for a moment what you did throughout those years. Attended law school? Started a legal career? Became a judge? Perhaps you got married, had a family, watched your children grow. I sat in prison while people closest to me lived their lives and my life stood still."**

**-Rodolfo Taylor, January 27, 2022**

## INTRODUCTION

1.      In 1984, the Suffolk County law enforcement community came under pressure to address a string of unsolved gas station robberies that were suspected of having been committed by the same person.  In the aftermath of each robbery, police had interviewed the victims with varying success:  some identified the culprit from photos, others offered a description of the perpetrator, and still another said he could not and would not be able to identify the culprit at all. Included in the contemporaneously obtained statements and identifications from the victims were, for example, a pair who identified the same culprit—whom one of the eyewitnesses identified as the culprit "without [a] doubt"; a different pair who agreed upon a different culprit, a description of a perpetrator with "light complexion," and a series of five robberies in which the victims were simply unable to make a positive identification from a lineup.

2.      This case is about these records, which had two things in common:  none identified Rodolfo Taylor as the culprit, and none were turned over to Rodolfo Taylor when he was nevertheless charged with the robberies.  Instead, Mr. Taylor, a dark-skinned Black man who could never be confused as having "light complexion," and who was placed and not identified in all five negative lineups described above, was targeted, prosecuted, and spent twenty-seven years in prison for robberies he did not commit—unable to successfully defend himself because agents of the Suffolk County law enforcement apparatus blocked his access to basic and constitutionally protected information as part of their effort to "clear" the unsolved crimes.

3.      Rodolfo Taylor's convictions have now been vacated and dismissed by the Supreme Court of the State of New York, County of Suffolk, which has held that law enforcement's behavior surrounding Rodolfo Taylor's prosecutions represented a violation of his

constitutional right to due process. He brings the present action seeking compensation for the extraordinary damages he has suffered.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as claims in this action arise under 42 U.S.C. § 1983.

5.      This Court may exercise supplemental jurisdiction over the state law causes of action herein.

6.      Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b), because that is the judicial district in which the claims arose.

## MUNICIPAL LAW OBLIGATIONS

7.      Rodolfo Taylor timely served a notice of claim on or about February 10, 2022, less than ninety days after his claims accrued.

8.      A 50-H examination was conducted on March 31, 2022, but since this date Mr. Taylor's claims have not been settled, adjusted, or otherwise withdrawn.

## PARTIES

9.      Plaintiff, Rodolfo Taylor, is a resident of the State of New York and brings the present suit in his individual capacity.

10.     Defendant County of Suffolk is a municipal entity in the State of New York, home to the Suffolk County Police Department and the Suffolk County District Attorney's Office, and was the employer of all individually named defendants in this case, all of whom were acting in the scope of their employments under color of law at all relevant times.

11.     Detective Robert Anderson was at all relevant times a Detective in the Suffolk County Police Department acting under color of state law. He is sued here in his personal capacity.

12.     Detective John Christie was at all relevant times a Detective in the Suffolk County Police Department acting under color of state law.  He is sued here in his personal capacity.

13.     Detective Arthur Stover was at all relevant times a Detective in the Suffolk County Police Department acting under color of state law.  He is sued here in his personal capacity.

14.     Detective Harold Wycoff was at all relevant times a Detective in the Suffolk County Police Department acting under color of state law.  He is sued here in his personal capacity.

15.     Detective Robert Sievers was at all relevant times a Detective in the Suffolk County Police Department acting under color of state law.  He is sued here in his personal capacity.

16.     Detective John Horan was at all relevant times a Detective in the Suffolk County Police Department acting under color of state law.  He is sued here in his personal capacity.

17.     Detective Kevin Cronin was at all relevant times a Detective in the Suffolk County Police Department acting under color of state law.  He is sued here in his personal capacity.

18.     Detective D.A. Miller was at all relevant times a Detective in the Suffolk County Police Department acting under color of state law.  He is sued here in his personal capacity.

19.     Sergeant William Petterson was at all relevant times a Detective in the Suffolk County Police Department acting under color of state law.  He is sued here in his personal capacity.

20.     Officer Jensen was at all relevant times a Detective in the Suffolk County Police Department acting under color of state law.  He is sued here in his personal capacity.

21.     The John Doe Agents of Suffolk County are unknown agents of the Suffolk County law enforcement community who at all relevant times acted under color of state law and are sued in their personal capacities.

## STATEMENT OF FACTS

22.     In 1984, Suffolk County experienced a string of approximately nine robberies that were claimed to be related to each other.

23.     Among the robberies, one in particular occurred on February 22, 1984 at a Texaco gas station (the "Texaco Robbery")[1]; one occurred on May 29, 1984 at a Shell gas station ("Shell Robbery 1")[2]; one occurred at the same Shell gas station on June 2, 1984 ("Shell Robbery 2")[3]; and one occurred at the same Shell gas station again on June 10, 1984 ("Shell Robbery 3")[4] (collectively, the "Charged Robberies").

24.     On February 22, 2014, the Texaco Robbery victim went to the Suffolk County Police Department "Identification Section." There, with Detective John Christie, the victim viewed numerous mugshots and photographs of potential suspects. On information and belief, included among those photographs was one of Rodolfo Taylor. The victim, Gary Meeanhan, was unable to identify any of the images as depicting the robber (the "February Non-Identification").

25.      Before leaving the Identification Section on February 22, 2014, Mr. Meeanhan facilitated the making of a composite sketch of the robber. The sketch depicted a man with a short afro, large lips, and no facial hair ("Composite 1"), and in commenting on the sketch Detective Christie noted that it bore a strong resemblance to a known individual named Van Taylor (no relation to Rodolfo Taylor).

26.     With the Texaco Robbery still unsolved, on May 29, 1984 Daniel Farrell gave a statement to the Suffolk County Police Department, including to Detective Miller, as an eyewitness

---

[1] This robbery drew the case identifier CC#84-63161.
[2] This robbery drew the case identified CC#84-195474.
[3] This robbery drew the case identifier CC#84-201417.
[4] This robbery drew the case identifier CC#84-214911.

5

of Shell Robbery 1.  Similar to the February Composite provided by Mr. Meeanham, Mr. Farrell described the culprit as having "no beard, no moustache[e]" (the "May Farrell Statement").

27.     After Shell Robbery 2, Mr. Farrell, now a second-time victim, gave a statement claiming the same perpetrator had committed Shell Robberies 1 and 2; but this time, only four days later, he described the perpetrator as having a "light complexion" and facial hair.

28.     Thereafter, Mr. Farrell viewed a photo array shown by the Suffolk County Police Department agents Detective Horan and Officer Jensen.  There, he positively identified a suspect and "with no hesitation … stat[ed] without doubt that this [was] the same subject that robbed [him] on May 29th 1984 and again on June 2nd 1984" (the "June 12 Farrell Statement").  That subject was not Rodolfo Taylor.  His name was Lawrence Caudle.

29.     The same day—June 12—the Suffolk County Police Department obtained another statement from an eyewitness to Shell Robbery 2.  This witness, Kathleen Young, echoed witness Farrell.  "While looking at a group of six color pictures of black men," she said, "I told the officers that the picture labeled numbered one (1) looked very much like the man who I saw commit the Robbery on June 2, 1984.  I now know this subject to be Lawrence Caudle" (the "June 12 Young Statement").

30.     Two days later, the Suffolk County Police Department went back to Mr. Farrell to have him review more photographs and to take another statement from him.  His response had now changed, and he selected as the culprit another man.  Once again, however, it was not Rodolfo Taylor.  It was a man named Forlando Carlton (the "June 14 Farrell Statement").

31.     On the same date, June 14, 1984, the Suffolk County Police Department took a statement from yet another eyewitness to Shell Robbery 2.  This eyewitness, Dennis Ford,

identified the same suspect as had been identified that day by Mr. Farrell: Forlando Carlton (the "June 14 Ford Statement").

32.     After Shell Robbery 3, Detectives Stover and Wycoff spoke with eyewitness Harold Bailey. They showed him a composite sketch that had been created under CC#84-18425 ("Composite 2")—none of the charged robberies—and showed him photo books containing numerous Black male subjects. On information and belief, Rodolfo Taylor's photograph was contained within this photo book. Yet as reflected in Detective Stover's report from June 11, 1984 (the "June 11 Bailey Report"), Mr. Bailey could not positively identify anyone—and, worse, admitted he "*would* not be able to identify anyone in a lineup either" (emphasis added). But he did select one man as a possible lookalike. Once again, though, it was not Rodolfo Taylor. It was a man named Robert Calloway.

33.     Sgt. Petterson was aware of the June 11 Bailey Report as well as its substance.

34.     The Suffolk County Police Department intentionally withheld from the prosecution and Rodolfo Taylor, *inter alia*:

        a.   the May Farrell Statement;

        b.   the June 11 Bailey Report;

        c.   Composite 2;

        d.   the June 12 Young Statement;

        e.   the June 12 Farrell Statement;

        f.   the June 14 Farrell Statement; and

        g.   the June 14 Ford Statement.

35.     In addition, the Suffolk County Police Department withheld from Rodolfo Taylor the February Non-Identification.

36.     The investigation into the robberies was led by Detective Robert Anderson.

37.     By July 1, 1984, none of the string of robberies had been solved.

38.     On or about July 1, 1984, Detective Robert Anderson, either immediately or eventually with the help of the other named defendants, enacted a plan to "clear" the nine robberies by pinning them on a convenient suspect rather than an appropriate suspect.

39.     Without Rodolfo Taylor having been named or identified by any victim or witness to any of the Charged Robberies, on July 1, 1984, Detective Anderson, flanked by Detective Sievers and Detective Cronin, showed Mr. Bailey a photospread with Rodolfo Taylor's photograph included.  The photospread included no other suspects.

40.     The photograph of Rodolfo Taylor came from a slate of spare photographs that had been kept in the Suffolk County Police Department Identification Bureau and, in his case, had been taken in October 1980.

41.     Detectives Anderson and Sievers used suggestive techniques to assure that Mr. Bailey identified Rodolfo Taylor from the photospread.

42.     Nearly five months after the Texaco Robbery, weeks after the Shell Robberies, and with five eyewitnesses who had all previously identified other suspects or disclaimed the ability to credibly identify anyone at all, Detective Anderson gathered all five of the eyewitnesses to appear on July 3, 1984, all in the same location in the Suffolk County Police Department, and, from all of them, secured a (false) positive lineup identification of Rodolfo Taylor as the culprit in all four Charged Robberies.

43.     For five additional robberies that had been suspected of being committed by the same person as the Charged Robberies,[5] Rodolfo Taylor was placed in lineups for identification

---

[5] These additional cases bear the identification numbers CC#84-236652, CC#83-184235, CC#84-208736, CC#84-230917, and CC#84-243367

by victims and was selected as the perpetrator in none of them (the "Five Negative July 3 Lineups").

44.     Detective Anderson withheld all records of the Five Negative July 3 Lineups.

45.     Detective Anderson arrested Rodolfo Taylor on or about July 3, 1984 for the Charged Robberies.

46.     When Rodolfo Taylor was arrested, he was 24 years old.

47.     For the Texaco Robbery, Rodolfo Taylor was charged with Robbery in the first degree.

48.     For Shell Robbery 1, Rodolfo Taylor was charged with Robbery in the first degree.

49.     For Shell Robbery 2, Rodolfo Taylor was charged with Robbery in the first degree.

50.     For Shell Robbery 3, Rodolfo Taylor was charged with Robbery in the first degree.

51.     Four of the five cases related to Five Negative July 3 Lineups were marked as "exceptionally cleared," allowing the defendants to claim that they had solved the rash of robberies.

52.     Rodolfo Taylor was indicted for the Texaco Robbery as well as Shell Robberies 2 and 3 (the "Indicted Cases").

53.     The indictments of Rodolfo Taylor were secured through perjury and fraud committed by Detective Anderson and other defendants in the grand jury, who suborned false and materially incomplete statements, including, *inter alia*, the withholding of all information concerning the February Non-Identification, the May Farrell Statement, the June 11 Bailey Report, Composite 2, the June 12 Young Statement, the June 12 Farrell Statement, the June 14 Farrell Statement, the June 14 Ford Statement, and the Five Negative July 3 Lineups (the "Withheld Materials"); which instead falsely indicated that Rodolfo Taylor was the one and only person who

had ever been identified by the eyewitnesses; which withheld that victims of at least five other robberies committed by the same culprit as the Charged Robberies were presented with Rodolfo Taylor in a lineup and did *not* select him as the culprit; which withheld the fact that eyewitness Farrell had described the culprit as having a "light complexion" and had flip-flopped on whether he had facial hair; and which withheld the coercive techniques used to secure the inculpatory identifications by Ford, Farrell, Meeanhan, Young, and Bailey.

54.     The defendants acted during all relevant times with actual malice—prosecuting Mr. Taylor without probable cause, without the pursuit of justice, and instead to serve alternative goals including, but not limited to, "clearing" a spate of local robberies.

55.     Rodolfo Taylor was held in custody for nearly the entire time between his July 3, 1984 arrest and his June and September 1985 trials.

56.     Lacking a wide array of material exculpatory information, including exculpatory information related to *every single eyewitness* who testified against him at trial, Rodolfo Taylor was convicted of the Indicted Cases.

57.     At a consolidated trial, he was convicted of the Texaco Robbery and Shell Robbery 2 on June 27, 1985 ("Trial 1"); and three months later he was convicted of Shell Robbery 3 on September 26, 1985 ("Trial 2").

58.     For his Trial 1 conviction, Rodolfo Taylor was sentenced to 9 to 18 years in prison; and for his Trial 2 conviction; Rodolfo Taylor was sentenced to an additional (consecutive) 9 to 18 years in prison.

59.     Rodolfo Taylor was in prison until he was 51 years old.

60.     As a consequence of the defendants' conduct, Mr. Taylor was incarcerated for 27 years.

61.     Rodolfo Taylor suffered extraordinary damages in connection with his wrongful conviction.

62.     Rodolfo Taylor suffered severe emotional distress, humiliation, deprivation of dignity, loss of liberty, and pecuniary damages.

63.     On or about January 18, 2022, the Supreme Court of the State of New York, County of Suffolk (Ambro, J.S.C.), vacated Rodolfo Taylor's convictions because newly discovered evidence—i.e. discovery of the Withheld Materials—demonstrated that Rodolfo Taylor's convictions had been achieved in violation of his constitutional rights.

64.     On January 27, 2022, Justice Ambro dismissed the charges against Rodolfo Taylor on consent of the District Attorney's Office.

65.     Having been released approximately ten years earlier, Rodolfo Taylor appeared at the dismissal-proceedings as a 61-year-old man.  "I was 24 years old when I was wrongfully charged with these robberies," he stated on the record, "and I spent the next 27 years of my life behind bars.  From 24 to 51, I was in prison."  He went on:

> I would like for the Court and everyone here to stop and think for a moment what you did throughout those years.  Attended law school? Started a legal career?  Became a judge?  Perhaps you got married, had a family, watched your children grow.  I sat in prison while people closest to me lived their lives and my life stood still.  My great grandmother passed away.  My father passed away.  My daughters grew up to be women. … While I lived behind bars, my mother began suffering from dementia, and I slowly disappeared in her eyes. … At 51, I was finally released.  I had served all of – not my time but someone else's time.  Today I'm finally free.

## CAUSES OF ACTION

### FIRST:  MALICIOUS PROSECUTION UNDER 42 U.S.C. §1983
### as against Defendants Anderson and Sievers

66.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

67.     Defendant Anderson and other agents of Suffolk County initiated criminal proceedings against Plaintiff in Suffolk County, where he was charged with several counts of Robbery in the first degree.

68.     Defendant Sievers and other agents of Suffolk County initiated criminal proceedings against Plaintiff in Suffolk County, where he was charged with several counts of Robbery in the first degree

69.     Defendant Anderson and other agents of Suffolk County intentionally withheld material exculpatory evidence from the defense and District Attorney's Office, including, *inter alia*, the Withheld Materials as well as information concerning the suggestive nature of the identification procedures used to secure the Plaintiff's arrest and prosecution.

70.     Defendant Sievers and other agents of Suffolk County intentionally withheld material exculpatory evidence from the defense and District Attorney's Office, including, *inter alia*, the Withheld Materials as well as information concerning the suggestive nature of the identification procedures used to secure the Plaintiff's arrest and prosecution.

71.     Defendant Anderson, Defendant Christie, Defendant Sievers and Defendant Cronin intentionally withheld that eyewitness Meeanhan was unable to identify any suspect in February 1984, withholding the very fact that Meeanhan had been shown a photobook and thus, in the Conviction Integrity Bureau's words, preventing the criminal defense from being "able to

investigate and learn prior to trial whether Taylor's photo was among the mug shots that Meeanhan failed to identify."

72.     Defendant Anderson, Defendant Sievers and Defendant Miller intentionally withheld from the defense and District Attorney's Office that eyewitness Farrell gave a statement in May 1984, on the same date as Shell Robbery 1, identifying the culprit as having no facial hair and "light complexion"—which Rodolfo Taylor does not.

73.     Defendant Anderson, Defendant Sievers, Defendant Stover, Defendant Wycoff, and Defendant Petterson intentionally withheld from the defense and District Attorney's Office that in June 1984 eyewitness Bailey admitted he did not and would not be able to identify the culprit while ultimately selecting as a possible lookalike a third-party named Robert Calloway.

74.     Defendant Anderson and Defendant Sievers intentionally withheld the existence of a second composite sketch, from CC#84-18425, which on information and belief did not resemble Rodolfo Taylor.

75.     Defendant Anderson and Defendant Sievers intentionally withheld from the defense and District Attorney's Office that in June 1984 eyewitness Young gave a positive identification of a man different from Rodolfo Taylor as the culprit, a man also positively identified by eyewitness Farrell.

76.     Defendant Anderson, Defendant Sievers, Defendant Horan and Defendant Jensen intentionally withheld from the defense and District Attorney's Office that in June 1984 eyewitness Farrell, too, gave a positive identification of a man different from Rodolfo Taylor as the culprit, a man also positively identified by eyewitness Young.

77.     Defendant Anderson and Defendant Sievers intentionally withheld from the defense and District Attorney's Office that in June 1984 eyewitness Farrell, once again, gave a

positive identification of a (second) man different from Rodolfo Taylor as the culprit, a man also positively identified by eyewitness Ford.

78.     Defendant Anderson and Defendant Sievers intentionally withheld from the defense and District Attorney's Office that in June 1984 eyewitness Ford gave a positive identification of a man different from Rodolfo Taylor as the culprit, a man also positively identified by eyewitness Farrell.

79.     Defendant Anderson and Defendant Sievers intentionally withheld from the defense and District Attorney's Office five other robberies for which the victims were presented with Rodolfo Taylor as the suspect and did not identify him.

80.     Defendant Anderson and Defendant Sievers advised and encouraged the Suffolk County District Attorney's Office to prosecute Rodolfo Taylor.

81.     Defendant Anderson and Defendant Sievers lacked probable cause to believe that Rodolfo Taylor was guilty of the Charged Robberies, knew that they lacked probable cause, and thus fabricated evidence to help secure an indictment and conviction.

82.     The criminal charges against Rodolfo Taylor were terminated in his favor as his convictions were vacated on the basis of, *inter alia*, violations of his constitutional rights, and the cases against him were dismissed.

83.     Rodolfo Taylor's liberty was restrained post-arraignment, including by being detained pretrial and by then being incarcerated for twenty-seven years until his release.

84.     The prosecution was not supported by probable cause that Rodolfo Taylor had committed the Charged Robberies or any other charge for which he had been arraigned.

85.     The indictments of Rodolfo Taylor were secured through perjury and fraud committed by Detective Anderson and other agents of Suffolk County in the grand jury, who

suborned false and materially incomplete statements, including, *inter alia*, the withholding of all Withheld Materials; falsely indicated that Rodolfo Taylor was the one and only person who had ever been identified by the eyewitnesses; withholding that victims of at least five other robberies committed by the same culprit as the Charged Robberies were presented with Rodolfo Taylor in a lineup and did *not* select him as the culprit; withholding the fact that eyewitness Farrell had described the culprit as having a "light complexion" and had flip-flopped on whether he had facial hair; and withholding the coercive techniques used to secure the inculpatory identifications by Ford, Farrell, Meeanhan, Young, and Bailey.

86.     Defendant Anderson, Defendant Sievers, as well as the other defendants recited herein and other agents of Suffolk County, acted during all relevant times with actual malice -- prosecuting Rodolfo Taylor without probable cause, without the pursuit of justice, and instead to serve alternative goals including, but not limited to, "clearing" the spate of robbery investigations that befell Suffolk County in 1984.

87.     Rodolfo Taylor suffered substantial damage from the malicious prosecution as set forth above, including, but not limited to, spending twenty-seven years in prison.

88.     In addition to compensatory damages, Rodolfo Taylor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

89.     Rodolfo Taylor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

**SECOND:  MALICIOUS PROSECUTION UNDER STATE LAW**
**as against Defendants Anderson, Sievers, and the County of Suffolk**

90.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

91.     Defendant Anderson and other agents of Suffolk County initiated criminal proceedings against Plaintiff in Suffolk County, where he was charged with several counts of Robbery in the first degree.

92.     Defendant Sievers and other agents of Suffolk County initiated criminal proceedings against Plaintiff in Suffolk County, where he was charged with several counts of Robbery in the first degree

93.     Defendant Anderson and other agents of Suffolk County intentionally withheld material exculpatory evidence from the defense and District Attorney's Office, including, *inter alia*, the Withheld Materials as well as information concerning the suggestive nature of the identification procedures used to secure the Plaintiff's arrest and prosecution.

94.     Defendant Sievers and other agents of Suffolk County intentionally withheld material exculpatory evidence from the defense and District Attorney's Office, including, *inter alia*, the Withheld Materials as well as information concerning the suggestive nature of the identification procedures used to secure the Plaintiff's arrest and prosecution.

95.     Defendant Anderson, Defendant Christie, Defendant Sievers and Defendant Cronin intentionally withheld that eyewitness Meeanhan was unable to identify any suspect in February 1984, withholding the very fact that Meeanhan had been shown a photobook and thus, in the Conviction Integrity Bureau's words, preventing the criminal defense from being "able to investigate and learn prior to trial whether Taylor's photo was among the mug shots that Meeanhan failed to identify."

96.     Defendant Anderson, Defendant Sievers and Defendant Miller intentionally withheld from the defense and District Attorney's Office that eyewitness Farrell gave a statement

in May 1984, on the same date as Shell Robbery 1, identifying the culprit as having no facial hair and "light complexion"—which Rodolfo Taylor does not.

97.     Defendant Anderson, Defendant Sievers, Defendant Stover, Defendant Wycoff, and Defendant Petterson intentionally withheld from the defense and District Attorney's Office that in June 1984 eyewitness Bailey admitted he did not and would not be able to identify the culprit while ultimately selecting as a possible lookalike a third-party named Robert Calloway.

98.     Defendant Anderson and Defendant Sievers intentionally withheld the existence of a second composite sketch, from CC#84-18425, which on information and belief did not resemble Rodolfo Taylor.

99.     Defendant Anderson and Defendant Sievers intentionally withheld from the defense and District Attorney's Office that in June 1984 eyewitness Young gave a positive identification of a man different from Rodolfo Taylor as the culprit, a man also positively identified by eyewitness Farrell.

100.     Defendant Anderson, Defendant Sievers, Defendant Horan and Defendant Jensen intentionally withheld from the defense and District Attorney's Office that in June 1984 eyewitness Farrell, too, gave a positive identification of a man different from Rodolfo Taylor as the culprit, a man also positively identified by eyewitness Young.

101.     Defendant Anderson and Defendant Sievers intentionally withheld from the defense and District Attorney's Office that in June 1984 eyewitness Farrell, once again, gave a positive identification of a (second) man different from Rodolfo Taylor as the culprit, a man also positively identified by eyewitness Ford.

102.     Defendant Anderson and Defendant Sievers intentionally withheld from the defense and District Attorney's Office that in June 1984 eyewitness Ford gave a positive

identification of a man different from Rodolfo Taylor as the culprit, a man also positively identified by eyewitness Farrell.

103.     Defendant Anderson and Defendant Sievers intentionally withheld from the defense and District Attorney's Office five other robberies for which the victims were presented with Rodolfo Taylor as the suspect and did not identify him.

104.     Defendant Anderson and Defendant Sievers advised and encouraged the Suffolk County District Attorney's Office to prosecute Rodolfo Taylor.

105.     Defendant Anderson and Defendant Sievers lacked probable cause to believe that Rodolfo Taylor was guilty of the Charged Robberies, knew that they lacked probable cause, and thus fabricated evidence to help secure an indictment and conviction.

106.     The criminal charges against Rodolfo Taylor were terminated in his favor as his convictions were vacated on the basis of, *inter alia*, violations of his constitutional rights, and the cases against him were dismissed.

107.     Rodolfo Taylor's liberty was restrained post-arraignment, including by being detained pretrial and by then being incarcerated for twenty-seven years until his release.

108.     The prosecution was not supported by probable cause that Rodolfo Taylor had committed the Charged Robberies or any other charge for which he had been arraigned.

109.     The indictments of Rodolfo Taylor were secured through perjury and fraud committed by Detective Anderson and other agents of Suffolk County in the grand jury, who suborned false and materially incomplete statements, including, *inter alia*, the withholding of all Withheld Materials; falsely indicated that Rodolfo Taylor was the one and only person who had ever been identified by the eyewitnesses; withholding that victims of at least five other robberies committed by the same culprit as the Charged Robberies were presented with Rodolfo Taylor in a

lineup and did *not* select him as the culprit; withholding the fact that eyewitness Farrell had described the culprit as having a "light complexion" and had flip-flopped on whether he had facial hair; and withholding the coercive techniques used to secure the inculpatory identifications by Ford, Farrell, Meeanhan, Young, and Bailey.

110.    Defendant Anderson, Defendant Sievers, as well as the other defendants recited herein and other agents of Suffolk County, acted during all relevant times with actual malice -- prosecuting Rodolfo Taylor without probable cause, without the pursuit of justice, and instead to serve alternative goals including, but not limited to, "clearing" the spate of robbery investigations that befell Suffolk County in 1984.

111.    The County of Suffolk is liable for the malicious prosecution of Rodolfo Taylor under a theory of *respondeat superior*, as at all times the defendants and agents recited herein were acting within the scope of their employment, for the County's benefit and under its control.

112.    Rodolfo Taylor suffered substantial damage from the malicious prosecution as set forth above, including, but not limited to, spending twenty-seven years in prison.

113.    In addition to compensatory damages, Rodolfo Taylor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

114.    Rodolfo Taylor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

### THIRD:  FALSE ARREST UNDER 42 U.S.C. §1983
### as against Defendant Anderson

115.    Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

116.    Defendant Anderson intended to arrest Plaintiff and caused him to be confined.

117.    On information and belief, at least one of the John Doe defendants intended to arrest Plaintiff and caused him to be confined

118.  Plaintiff was aware of his confinement and did not consent to it.

119.  The arrests and confinement of Plaintiff was not supported by probable cause.

120.  The arrests and confinement of Plaintiff was not otherwise privileged.

121.  The indictments of Rodolfo Taylor were secured through perjury and fraud committed by Detective Anderson and other defendants in the grand jury, who suborned false and materially incomplete statements, including, *inter alia*, the withholding of all Withheld Materials; falsely indicated that Rodolfo Taylor was the one and only person who had ever been identified by the eyewitnesses; withholding that victims of at least five other robberies committed by the same culprit as the Charged Robberies were presented with Rodolfo Taylor in a lineup and did *not* select him as the culprit; withholding the fact that eyewitness Farrell had described the culprit as having a "light complexion" and had flip-flopped on whether he had facial hair; and withholding the coercive techniques used to secure the inculpatory identifications by Ford, Farrell, Meeanhan, Young, and Bailey.

122.  Plaintiff suffered substantial damage from the false arrest as set forth herein.

123.  In addition to compensatory damages, Rodolfo Taylor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

124.  Rodolfo Taylor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

### FOURTH:  FALSE ARREST UNDER STATE LAW
### as against Defendant Anderson and the County of Suffolk

125.  Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

126.  Defendant Anderson intended to arrest Plaintiff and caused him to be confined.

127.  On information and belief, at least one of the John Doe defendants intended to arrest Plaintiff and caused him to be confined.

128.    Plaintiff was aware of his confinement and did not consent to it.

129.    The arrests and confinement of Plaintiff was not supported by probable cause.

130.    The arrests and confinement of Plaintiff were not otherwise privileged.

131.    The indictments of Rodolfo Taylor were secured through perjury and fraud committed by Detective Anderson and John Doe defendants in the grand jury, who suborned false and materially incomplete statements, including, *inter alia*, the withholding of all Withheld Materials; falsely indicated that Rodolfo Taylor was the one and only person who had ever been identified by the eyewitnesses; withholding that victims of at least five other robberies committed by the same culprit as the Charged Robberies were presented with Rodolfo Taylor in a lineup and did *not* select him as the culprit; withholding the fact that eyewitness Farrell had described the culprit as having a "light complexion" and had flip-flopped on whether he had facial hair; and withholding the coercive techniques used to secure the inculpatory identifications by Ford, Farrell, Meeanhan, Young, and Bailey.

132.    The County of Suffolk is liable for the false arrest of Plaintiff under a theory of *respondeat superior*, as at all times the individually named defendants were acting within the scope of their employment, for the County's benefit and under its control.

133.    Plaintiff suffered substantial damage from the false arrest as set forth herein.

134.    In addition to compensatory damages, Rodolfo Taylor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

135.    Rodolfo Taylor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

## FIFTH:  DUE PROCESS VIOLATION UNDER 42 U.S.C. §1983
### as against Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, and John Does 1-5

136.    Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

137.    Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, and John Does 1-5 were investigating officials in connection with the Charged Robberies

138.    Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, and John Does 1-5 intentionally withheld material exculpatory information from the defense and District Attorney's Office, including the Withheld Materials.

139.    The failure to disclose the Withheld Materials was likely to (and did) influence the juries' verdicts.

140.    The District Attorney's Office itself has recognized that the failure to disclose the Withheld Materials constituted a violation of Rodolfo Taylor's constitutional right to Due Process.

141.    Rodolfo Taylor suffered a deprivation of liberty as a consequence of the failure to Disclose the Withheld Materials, including, but not limited to, spending twenty-seven years in prison.

142.    In addition to compensatory damages, Rodolfo Taylor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

143.    Rodolfo Taylor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

144.    In addition to withholding the Withheld Materials, Defendant Anderson and Defendant Sievers affirmatively fabricated evidence.

145.     Defendant Anderson and Defendant Sievers fabricated information in connection with the Charged Robberies -- including, *inter alia*, procuring false identifications of Rodolfo Taylor through unduly suggestive identification techniques and indicating that these identification were reliable and the only identifications that the eyewitnesses had given.

146.     The information that Defendant Anderson and Defendant Sievers fabricated was likely to (and did) influence the juries' verdicts.

147.     Defendant Anderson and Defendant Sievers forwarded the fabricated evidence to the District Attorney's Office.

148.     Rodolfo Taylor suffered a deprivation of liberty as a consequence of Defendant Anderson and Defendant Sievers's evidence-fabrication, including, but not limited to, spending twenty-seven years in prison.

149.     The County of Suffolk is liable for under a theory of *respondeat superior*, as at all times the individually named defendants were acting within the scope of their employment, for the County's benefit and under its control

150.     Plaintiff suffered substantial damage as set forth herein.

151.     In addition to compensatory damages, Rodolfo Taylor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

152.     Rodolfo Taylor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

### SIXTH:  DUE PROCESS VIOLATION UNDER STATE LAW
**as against Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, John Does 1-5, and the County of Suffolk**

153.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

154.     Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, and John Does 1-5 were investigating officials in connection with the Charged Robberies

155.     Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, and John Does 1-5 intentionally withheld material exculpatory information from the defense and District Attorney's Office, including the Withheld Materials.

156.     The failure to disclose the Withheld Materials was likely to (and did) influence the juries' verdicts.

157.     The District Attorney's Office itself has recognized that the failure to disclose the Withheld Materials constituted a violation of Rodolfo Taylor's constitutional right to Due Process.

158.     Rodolfo Taylor suffered a deprivation of liberty as a consequence of the failure to Disclose the Withheld Materials, including, but not limited to, spending twenty-seven years in prison.

159.     In addition to compensatory damages, Rodolfo Taylor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

160.     Rodolfo Taylor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

161.     In addition to withholding the Withheld Materials, Defendant Anderson and Defendant Sievers affirmatively fabricated evidence.

162.     Defendant Anderson and Defendant Sievers fabricated information in connection with the Charged Robberies -- including, *inter alia*, procuring false identifications of Rodolfo Taylor through unduly suggestive identification techniques and indicating that these identification were reliable and the only identifications that the eyewitnesses had given.

163.     The information that Defendant Anderson and Defendant Sievers fabricated was likely to (and did) influence the juries' verdicts.

164.     Defendant Anderson and Defendant Sievers forwarded the fabricated evidence to the District Attorney's Office.

165.     Rodolfo Taylor suffered a deprivation of liberty as a consequence of Defendant Anderson and Defendant Sievers's evidence-fabrication, including, but not limited to, spending twenty-seven years in prison.

166.     The County of Suffolk is liable for under a theory of *respondeat superior*, as at all times the individually named defendants were acting within the scope of their employment, for the County's benefit and under its control

167.     In addition to compensatory damages, Rodolfo Taylor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

168.     Rodolfo Taylor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

**SEVENTH:  ABUSE OF PROCESS UNDER 42 U.S.C. §1983**
**as against Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, and John Does 1-5**

169.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

170.     Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, and John Does 1-5 participated in the issuance of criminal process against Rodolfo Taylor, including but not limited to his arrest, indictment and prosecution.

171.     Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, and John Does 1-5 intended to do harm to Rodolfo Taylor without justification,

including but not limited to imprisoning him for crimes he did not commit because he represented a convenient target.

172.     Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, and John Does 1-5 used criminal process in an attempt to obtain a collateral objective, including but not limited to "clearing" unsolved robberies in Suffolk County for the purpose of reputational and career advancement as well as to avoid public pressure concerning the unsolved crimes.

173.     Rodolfo Taylor was damaged as a consequence of the abuse of process, including but not limited to loss of liberty as well as emotional distress associated with wrongfully spending 27 years in prison.

174.     In addition to compensatory damages, Rodolfo Taylor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

175.     Rodolfo Taylor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

### EIGHTH:  ABUSE OF PROCESS UNDER STATE LAW
as against Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, John Does 1-5, and the County of Suffolk

176.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

177.     Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, and John Does 1-5 participated in the issuance of criminal process against Rodolfo Taylor, including but not limited to his arrest, indictment and prosecution.

178.     Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, and John Does 1-5 intended to do harm to Rodolfo Taylor without justification,

including but not limited to imprisoning him for crimes he did not commit because he represented a convenient target.

179.  Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, and John Does 1-5 used criminal process in an attempt to obtain a collateral objective, including but not limited to "clearing" unsolved robberies in Suffolk County for the purpose of reputational and career advancement as well as to avoid public pressure concerning the unsolved crimes.

180.  Rodolfo Taylor was damaged as a consequence of the abuse of process, including but not limited to loss of liberty as well as emotional distress associated with wrongfully spending 27 years in prison.

181.  At all relevant times, Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, and John Does 1-5 were acting in the scope of their employments.

182.  At all relevant times Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, and John Does 1-5 were acting with Suffolk County's assent, for its benefit, and under its control.

183.  Suffolk County is liable for the wrongdoing of Defendants Anderson, Christie, Sievers, Stover, Horan, Jensen, Wycoff, Miller, Cronin, Petterson, and John Does 1-5 through the doctrine of *respondeat superior*.

184.  In addition to compensatory damages, Rodolfo Taylor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

185.  Rodolfo Taylor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

## NINTH: *MONELL* LIABILITY
### as against Defendant County of Suffolk

186.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

187.     Plaintiff's constitutional rights were violated by an official policy and custom of the County of Suffolk through the illegal official policies and customs of the Suffolk County District Attorney's Office and Police Department.

188.     The Suffolk County District Attorney's Office and Police Department in the 1980s had an official policy and custom of failing adequately to train and supervise its Assistant District Attorneys and officers on the due process rules of *Brady* and its progeny.

189.     The Suffolk County District Attorney's Office and Police Department in the 1980s had an official policy and custom of failing adequately to supervise and discipline its Assistant District Attorneys and officers to prevent misconduct, including, but not limited to, violations of *Brady* and its progeny.

190.     The Suffolk County District Attorney's Office and Police Department in the 1980s had an official policy and custom of failing adequately to train its Assistant District Attorneys and officers on the due process rules against presenting false, improper, or materially misleading information to the jury.

191.     The Suffolk County District Attorney's Office and Police Department in the 1980s had an official policy and custom of protecting each other against allegations and/or discovery of wrongdoing, leading to an environment in which such prosecutors and officers felt above the law.

192.     The Suffolk County District Attorney's Office and Police Department in the 1980s had an official policy and custom of failing adequately to supervise and discipline its Assistant

District Attorneys and officers to prevent misconduct, including, but not limited to, presenting false, improper, or materially misleading information to the jury.

193.     Such policies, customs, and failures, with others, culminated in a special report issued in or about 1989 that noted the degree of "criticism and controversy" surrounding prosecutorial and police misconduct in Suffolk County that was "unique to any county in New York State with respect to frequency and intensity," including, *inter alia*, "the continuing pattern of failure on the part of both the District Attorney's Office and the Police Department to conduct proper investigations of allegations of employee misconduct."  *See* STATE OF NEW YORK COMMISION OF INVESTIGATION, AN INVESTIGATION OF THE SUFFOLK COUNTY DISTRICT ATTORNEY'S OFFICE AND POLICE DEPARTMENT (April 1989).

194.     The illegal policies created an environment in the Suffolk County law enforcement community that convinced line prosecutors, officers and their supervisors that they could engage in illegal and over-aggressive police and prosecutorial tactics with impunity.

195.     The illegal policies created an environment in Suffolk County that led directly to the *Brady* and other violations in this case, including the withholding of Withheld Materials; falsely indicated that Rodolfo Taylor was the one and only person who had ever been identified by the eyewitnesses; withholding that victims of at least five other robberies committed by the same culprit as the Charged Robberies were presented with Rodolfo Taylor in a lineup and did *not* select him as the culprit; withholding the fact that eyewitness Farrell had described the culprit as having a "light complexion" and had flip-flopped on whether he had facial hair; withholding the coercive techniques used to secure the inculpatory identifications by Ford, Farrell, Meeanhan, Young, and Bailey; and the taking of affirmative steps before and during trial to prevent the discovery of such unconstitutional behavior.

196.    At all relevant times Assistant District Attorney Tschiember as well as the individually named defendants were acting as local law enforcement officials in the scope of their employment with the County of Suffolk.

197.    Policymakers in the County of Suffolk knew at all relevant times to a moral certainty that Assistant District Attorneys and officers would regularly confront circumstances in which they would have to make determinations as to whether material in their possession should be disclosed pursuant to *Brady* and its progeny.

198.    Policymakers in the County of Suffolk knew at all relevant times to a moral certainty that Assistant District Attorneys and officers would regularly confront circumstances in which they would have to identify, and know not to cross, the line between being a zealous advocate or police officer and the knowing presentation of false, improper or materially misleading information to a judge or jury.

199.    Policymakers in the County of Suffolk knew at all relevant times to a moral certainty that Assistant District Attorneys and officers would regularly confront circumstances in which the scope of their *Brady* obligations would require a difficult decision of the sort that proper training would make less difficult.

200.    Policymakers in the County of Suffolk knew at all relevant times to a moral certainty that Assistant District Attorneys and officers would regularly confront circumstances in which they would have to identify the line between being a zealous advocate or officer and the knowing presentation of false, improper or materially misleading information to a judge or jury -- an exercise of the sort that proper training and supervision would make less difficult.

201.    Policymakers in the County of Suffolk knew at all relevant times to a moral certainty that Assistant District Attorneys and officers who violate their *Brady* obligations would violate the due process rights of men and women facing criminal charges.

202.    Policymakers in the County of Suffolk knew at all relevant times to a moral certainty that Assistant District Attorneys and officers who knowingly present false, improper or materially misleading information to a judge or jury would violate the due process rights of men and women facing criminal charges.

203.    The defendants, as well as ADA Tschiember, violated *Brady* by, among other things, withholding evidence of the February Non-Identification.

204.    The defendants, as well as ADA Tschiember, exploited this *Brady* violation at trial and pre-trial proceedings by holding out Gary Meeanhan as a confident and unflinching witness notwithstanding the February Non-Identification, which was never disclosed, and preventing the discovery of the Withheld Materials.

205.    Plaintiff suffered substantial damage from the *Brady* and other due process violations occasioned by the official polices and customs as set forth above, including, but not limited to, spending twenty-seven years in prison.

## DAMAGES

206.    Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

207.    As a consequence of the Defendants' conduct, Plaintiff suffered substantial damages, including loss of liberty, emotional distress, damage to his reputation, pecuniary damages, and attorneys' fees.

208.    The Defendants should be held liable not only to compensate Rodolfo Taylor for his damages, but also to pay exemplary damages large enough to dissuade such egregious misconduct from taking place again in the future.

209.    The Defendants should be liable to pay attorneys' fees associated with this action as per the terms of 42 U.S.C. §1988(b).

[Please turn to next page.]

**WHEREFORE**, Plaintiff prays for relief as follows:

    A.    That the Court award compensatory damages to Plaintiff and against the defendants jointly and severally, in an amount to be determined at trial;

    B.    That the Court award punitive damages to Plaintiff, and against all defendants, in an amount to be determined at trial that will deter such conduct by defendants in the future;

    C.    That the Court award attorney's fees pursuant to 42 U.S.C. § 1988;

    D.    For a trial by jury;

    E.    For a pre-judgment and post-judgment interest and recovery of their costs; and

    F.    For any and all other relief to which they may be entitled.

Dated:  Garden City, New York
       July 18, 2022

                                          **BARKET EPSTEIN KEARON ALDEA & LOTURCO, LLP**

                          By:  _____

                                   Bruce Barket, Esq.
                                   John LoTurco, Esq.
                                   Alexander Klein, Esq.